1

2

3

4

5

6

7                  IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11   KYLE AVERY,

12              Plaintiff,              No. 2:11-cv-2528 KJM AC P

13         vs.

14   MARC ELIA, et al.,                <u>ORDER AND</u>

15              Defendants.            <u>FINDINGS & RECOMMENDATIONS</u>

16   _____/

17              Plaintiff, a state prisoner, is proceeding pro se with a civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is defendants' March 9, 2012 motion to dismiss

19   pursuant to Federal Rules of Civil Procedure 12(b) for failure to exhaust administrative remedies

20   and 12(b)(6) for failure to state a claim.  Plaintiff opposes the motion in part.  Also pending is

21   plaintiff's March 12, 2012 motion for preliminary injunctive relief, plaintiff's April 23, 2012

22   motion for court review of supplement briefing, and defendants' May 24, 2012 motion to strike

23   plaintiff's unauthorized sur-reply.  On review of the motions, the documents filed in support and

24   opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

25   ////

26   ////

                                         1

1                           FACTUAL ALLEGATIONS

2          At all times relevant to this action, plaintiff was housed at California State Prison

3  – Sacramento ("CSP-Sac").[1]  In the operative complaint filed September 23, 2011[2], plaintiff

4  brings suit against Community Program Manager Marc Elia, who is charged with the oversight

5  of the religious program at CSP-Sac, and Rabbi I. Korik, a rabbi employed at CSP-Sac, for

6  violation of plaintiff's right to the free exercise of his religion pursuant to the First Amendment

7  and right to equal protection pursuant to the Fourteenth Amendment.

8          On or around March 28, 2007, plaintiff, a practitioner of Ceremonial Magick[3],

9  was granted authorization by Rabbi Ira Book, not a party to this action, to participate in the

10  Kosher meal program at CSP-Sac as this meal program corresponds most closely with plaintiff's

11  religious beliefs.  Compl. at 11-12.

12          On an unidentified date, defendant Elia ordered a sergeant at CSP-Sac, also not a

13  party to this action, to confiscate plaintiff's Kosher meal card, which authorized plaintiff to

14  participate in the Kosher meal program.  Compl. at 12-13.  Plaintiff refused to forfeit his card.

15  Id. at 13.  Nonetheless, some while later, plaintiff contacted prison authorities to forfeit his

16  Kosher card.  Id.  On the forfeit form, plaintiff claimed that he was forfeiting his card under

17  duress.  Id.  In the complaint, plaintiff alleges that he chose to forfeit his Kosher card to avoid

18  "muddy[ing] a fight" that was then being litigated for the Wiccans.  Id.

19          In September 2010, plaintiff submitted a request to renew participation in the

20  Kosher meal program, as previously authorized by Rabbi Book, who was no longer at CSP-Sac.

21

22          [1] Plaintiff has since been transferred to the Richard J. Donovan Correctional Facility in
San Diego, California.  See Defs.' Opp'n to Pl.'s Mot. for Inj. Relief at 1.

23

24          [2] Though actually filed in this court on September 26, 2011, plaintiff's date of filing is
determined by the date that he delivered his complaint to prison authorities for forwarding to the
clerk of the court.  See Stillman v. Lamarque, 310 F.3d 1199, 1201 (9th Cir. 2003).

25

26          [3] According to plaintiff, Ceremonial Magick is a sect or denomination of the Wiccan
religion.  See Compl. at 11.

1   Compl. at 13-14.  Defendant Rabbi Korik denied plaintiff's request.  Id. at 14.  In late-2010,

2   plaintiff filed an inmate grievance concerning Rabbi Korik's denial of this request.  Id. at 14.

3   Plaintiff's grievance was granted at the informal level of review by Rabbi Korik, who renewed

4   plaintiff's Kosher diet card effective November 9, 2010.  Id.  Because he received the relief he

5   requested, plaintiff did not continue the appeal process.  Id.

6              On April 13, 2011, Rabbi Korik sent plaintiff a letter noticing plaintiff's removal

7   from the Kosher meal program on the ground that plaintiff was not Jewish.  Compl. at 15.

8              Plaintiff did not file an appeal concerning Rabbi Korik's revocation of plaintiff's

9   Kosher diet card because he assumed that any such appeal would be dismissed as duplicative of

10  plaintiff's previous appeal regarding his request to be reinstated into the Kosher meal program.

11  Compl. at 15-16.  Plaintiff believed that the previous appeal constituted a procedural bar that

12  prohibited him from exhausting the issue of Rabbi Korik's revocation of plaintiff's Kosher diet

13  card.  Id.

14                          RELEVANT PROCEDURAL BACKGROUND

15             Plaintiff filed suit against defendants Elia and Rabbi Korik on September 26,

16  2011.  On March 9, 2012, defendants filed the instant motion to dismiss, which plaintiff opposes.

17             On April 23, 2012, plaintiff filed a motion for the court to review supplemental

18  briefing.  Defendants ask the court to strike this supplemental briefing as an unauthorized sur-

19  reply.   Because the court does not find that defendants are prejudiced by the court's

20  consideration of this supplemental briefing, plaintiff's request will be granted and defendants'

21  request will be denied.

22             On March 12, 2012, plaintiff filed a motion for preliminary injunctive relief

23  wherein plaintiff seeks an order directing defendants to reinstate his Kosher diet card.

24  Defendants oppose this motion.

25  ////

26  ////

LEGAL STANDARD

"The Prison Litigation Reform Act [("PLRA")] requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)); Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005) (quoting Porter v. Nussle, 534 U.S. 516, 525 n.4 (2002)) (The PLRA "creates 'a general rule of exhaustion' for prisoner civil rights cases."). "'[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002) (quoting Porter, 534 U.S. at 532); accord Roles v. Maddox, 439 F.3d 1016, 1018 (9th Cir.), cert. denied, 549 U.S. 905 (2006). The PLRA's "exhaustion requirement is mandatory." McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); accord Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); see also Panaro v. City of North Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (The PLRA "represents a Congressional judgment that the federal courts may not consider a prisoner's civil rights claim when a remedy was not sought first in an available administrative grievance procedure."). Even if the prisoner seeks monetary or other relief that is unavailable through the grievance system in question, the prisoner must still first exhaust all available administrative remedies. See Booth v. Churner, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.").

While the PLRA requires "proper" exhaustion of available administrative remedies, Woodford v. Ngo, 548 U.S. 81, 93 (2006), it does not define the boundaries of proper exhaustion. See Jones, 549 U.S. at 218. Rather, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford, 548 U.S. at 90. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from

1     system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that

2     define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see, e.g., Marella v.

3     Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009, as amended June 5, 2009) (per curiam) ("The

4     California prison system's requirements define the boundaries of proper exhaustion.") (internal

5     quotation marks and citation omitted).  Absent a prison grievance procedure mandating the

6     naming of each individual involved, a prisoner need not identify all of the defendants later

7     named in a lawsuit during the administrative grievance process.  Jones, 549 U.S. at 218.

8          The PLRA's exhaustion requirement is not jurisdictional; rather, it creates an

9     affirmative defense that a defendant may raise in an unenumerated Rule 12(b) motion.  See

10    Jones, 549 U.S. at 213-14; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540

11    U.S. 810 (2003).  The defendant bears the burden of raising and proving the absence of

12    exhaustion.  Wyatt, 315 F.3d at 1119.  Specifically, the defendant must show that some

13    administrative relief remains available to the plaintiff "whether at unexhausted levels of the

14    grievance process or through awaiting the results of the relief already granted as a result of that

15    process." Brown, 422 F.3d at 936-37.  In deciding a motion to dismiss for failure to exhaust, a

16    court may "look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at

17    1119-20.  When a prisoner has not exhausted administrative remedies on a claim, "the proper

18    remedy is dismissal of the claim without prejudice." Id. at 1120.  However, dismissal of the

19    entire complaint is not required when a prisoner has exhausted some, but not all, of the claims

20    included in the complaint.  See Jones, 549 U.S. at 223-24.

21          California provides its inmates and parolees the right to appeal administratively

22    the alleged misconduct of correctional officers and "any departmental decision, action, condition

23    or policy perceived by those individuals as adversely affecting their welfare."  Cal. Code Regs.

24    tit. 15, § 3084.1(a), (e).  In order to exhaust administrative remedies within this system, a

25    prisoner normally must proceed through four levels: (1) initiation of informal resolution through

26    submission of a California Department of Corrections ("CDC") form describing the problem and

1  the action requested; (2) first level formal written appeal to the prison's appeals coordinator; (3)

2  second level formal appeal to the institution's warden or designee; and (4) third level formal

3  appeal to the CDCR Director ("Director's Level"). Id. § 3084.5; see Woodford, 548 U.S. at

4  90–91 (California prisoners are required to use the process established by Cal.Code Regs., tit. 15

5  §§ 3084.1, 3084.2–3084.6 in order to satisfy 42 U.S.C. § 1997e(a)); Porter, 534 U.S. at 532 (the

6  exhaustion requirement is mandatory and applies to all prisoner suits relating to prison life that

7  do not implicate the duration of the prisoner's sentence).

8                                              DISCUSSION

9  A.     Claims Against Defendant Marc Elia

10            Defendants seek dismissal of plaintiff's claims against defendant Elia on the

11 ground that plaintiff failed to exhaust his administrative remedies prior to filing suit.  In his

12 opposition, plaintiff acknowledges that he is currently in the process of exhausting

13 administrative remedies as to this defendant.  While plaintiff requests a stay of this action

14 pending exhaustion, a stay is improper because the PLRA requires that prisoners exhaust

15 administrative remedies *before* filing suit in federal court.  As amended by the PLRA, 42 U.S.C.

16 § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42

17 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

18 correctional facility until such administrative remedies as are available are exhausted."

19 Accordingly, plaintiff's claims against defendant Elia should be dismissed without prejudice.

20 B.     Claims Against Defendant Rabbi Korik

21            Defendants also seek dismissal of plaintiff's claims against defendant Rabbi

22 Korik as unexhausted.  Defendants argue that, while plaintiff did file a grievance in late-2010

23 concerning the Kosher meal program, that appeal addressed Rabbi Korik's denial of plaintiff's

24 request for reinstatement into the Kosher meal program, not Rabbi Korik's subsequet revocation

25 of plaintiff's Kosher diet card.  Because these are distinct appealable issues, plaintiff's previous

26 grievance did not preclude the filing of a new grievance.

                                                    6

1       Plaintiff admits that he did not file a grievance regarding Rabbi Korik's April

2   2011 revocation of plaintiff's Kosher diet card.  Plaintiff claims though that he was excused from

3   filing a grievance because any such grievance may have been dismissed as duplicative of his

4   previously-filed grievance concerning Rabbi Korik's denial of plaintiff's September 2010

5   request for a Kosher denial card.  Plaintiff further argues that, because his appeal regarding

6   Rabbi Korik's denial was granted at the informal level of review, he did not need to pursue his

7   grievance to the Director's Level.  He then states that a holding that he was required to exhaust

8   administrative remedies as to defendant's revocation of the Kosher diet card would allow prison

9   officials to manipulate the prison grievance process by initially granting requested relief and then

10  later revoking it.

11      In their reply, defendants argue, first, that plaintiff has presented no legal

12  authority in support of his position and, second, that there is nothing to suggest that Rabbi Korik

13  was attempting to "trick" plaintiff.  Rather, they assert that Rabbi Korik reversed his previous

14  directive reinstating plaintiff into the Kosher meal program once he learned that Avery was not

15  Jewish.

16      As set forth supra, the PLRA exhaustion requirement is mandatory.  There are,

17  however, certain instances in which an inmate is not required to appeal his grievance through the

18  third level of review.  See Brown, 422 F.3d at 940 (an inmate need not exhaust further levels of

19  review upon receiving all available remedies at an intermediate level of review).  In Harvey v.

20  Jordan, 605 F.3d 681 (9th Cir. 2010), the plaintiff filed a grievance requesting that he be

21  provided either a hearing and certain videotape evidence, or that prison officials dismiss a

22  disciplinary charge.  Prison officials partially granted his grievance and informed him that he

23  would be provided a hearing and access to the requested videotape.  Id. at 683.  The plaintiff was

24  satisfied with this response and did not appeal the decision.  Id. at 685.  After five months

25  without receiving the requested relief, the plaintiff used an appeal form to complain that he was

26  never provided the relief promised.  Id.  Prison officials construed his complaint as an appeal of

7

1   the decision granting him a hearing, and rejected it as untimely.  Id.  The plaintiff subsequently

2   filed suit and defendants moved to dismiss for failure to exhaust administrative remedies.  Id. at

3   683.

4        The Court of Appeals for the Ninth Circuit held that the plaintiff had "exhausted

5   the administrative process when the prison officials purported to grant relief that resolved his ...

6   grievance to his satisfaction."  Id. at 686.  The court explained:

7        An inmate has no obligation to appeal from a grant of relief, or a partial grant that
         satisfies him, in order to exhaust his administrative remedies. Nor is it the
8        prisoner's responsibility to ensure that prison officials actually provide the relief
         that they have promised.  See Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir.
9        2004) ("A prisoner who has not received promised relief is not required to file a
         new grievance where doing so may result in a never-ending cycle of
10       exhaustion.").

11       . . . Once the prison officials purported to grant relief with which [the inmate] was
         satisfied, his exhaustion obligation ended.  His complaint had been resolved, or so
12       he was led to believe, and he was not required to appeal the favorable decision.

13  Id. at 685.

14       Harvey is inapposite.  Plaintiff complains in this lawsuit about the 2011

15  revocation of his Kosher meal card.  He never received any relief from prison officials related to

16  the revocation, because he never filed a grievance.  Plaintiff argues in essence that his

17  (successful) grievance of Rabbi Korik's 2010 denial of the request for reinstatement

18  encompassed and prospectively exhausted any later issues that arose concerning Rabbi Korik

19  and the Kosher meal program.  As defendants point out, the law governing administrative

20  exhaustion provides no support for this position.  The fact that plaintiff had previously received

21  relief in relation to a district grievance involving a previous denial of Kosher meals does not

22  relieve him from the duty to exhaust administrative remedies regarding the revocation.  Plaintiff

23  does not assert that he was obstructed from his attempt to exhaust his claim that Rabbi Korik

24  improperly revoked his Kosher diet card, nor does he allege that a prison official's mistake

25  prevented proper exhaustion.  See Nunez v. Duncan, 591 F.3d 1217 (9th Cir. 2010); Woodford,

26  539 F.3d at 1110.

1          The court finds that the revocation of plaintiff's Kosher diet card is a sufficiently

2    distinct issue from the denial of plaintiff's earlier request for reinstatement into the Kosher meal

3    program so as to necessitate a separate grievance.  Although plaintiff seeks identical relief for

4    both issues – namely, the authorization to participate in the Kosher meal program – the specific

5    wrong that plaintiff complains of differs in these two instances.  As to the first instance in which

6    Rabbi Korik denied plaintiff's request to participate in the meal program, plaintiff's grievance

7    was granted on November 9, 2010, and plaintiff received authorization to participate in the meal

8    program.  Rabbi Korik's decision in that instance is not before the court.  The issue that is before

9    the court is the second alleged wrong committed by Rabbi Korik: his revocation of plaintiff's

10   Kosher diet card six months later.  The similarities between the two instances notwithstanding,

11   Rabbi Korik's conduct differs in each instance.  Because plaintiff's access to Kosher meals had

12   been restored in late 2010, the 2011 revocation constituted a new and discrete deprivation.

13   Accordingly, plaintiff should have filed a new grievance.

14          Lastly, plaintiff's belief that the filing of a grievance would have been futile does

15   not excuse him from filing an administrative grievance.  In light of the Supreme Court's

16   admonishment not to read "futility or other exceptions" into § 1997e(a), even if plaintiff was

17   able to show a likelihood that his administrative appeal will be dismissed as duplicative, such

18   showing would not suffice to excuse compliance with the exhaustion requirement.  See Booth,

19   532 U.S. at 740-41 n.6.  Additionally, as the documents attached to plaintiff's supplemental

20   briefing show, plaintiff's futility argument is undermined by the fact that he filed both an inmate

21   request form and an inmate grievance form regarding Rabbi Korik's revocation of his Kosher

22   diet card.  On September 7, 2011, plaintiff filed an inmate request form asking for reinstatement,

23   which was denied on September 26, 2011 on the ground that plaintiff may not participate in the

24   Kosher meal program because he is not Jewish.  See Doc. No. 26 at 27.  This request was

25   ultimately denied at the supervisor level on October 3, 2011.  Id.  Plaintiff then filed an inmate

26   grievance form on October 5, 2011, Appeal Number SAC-11-00867, which was denied up

1   through the second level of review on January 9, 2012.  See Doc. No. 26 at 21-30.  Plaintiff

2   submitted his appeal to the director's level of review on January 29, 2012.  See id.at 17.  While

3   plaintiff attempts to argue that the CSP-Sac mail room's failure to deliver mail on time impacted

4   his ability to exhaust his administrative remedies, this argument is unconvincing because the

5   evidence submitted by plaintiff himself shows that he did not initiate – let alone exhaust – his

6   administrative grievance process until *after* filing this action.  As noted earlier, administrative

7   remedies must be exhausted prior to filing suit.

8          In Woodford, the Supreme Court held that full and "proper exhaustion of

9   administrative remedies is necessary."  548 U.S. at 84.  While the Supreme Court recognized that

10  this may be harsh, it noted that pro se prisoners who litigate in federal court will likewise be

11  "forced to comply with numerous unforgiving deadlines and other procedural requirements."  Id.

12  at 103.  The Supreme Court recognized that this will prevent certain prisoner cases from

13  proceeding, but notes that a "centerpiece of the PLRA's effort to reduce the quantity ... of

14  prisoner suits is an 'invigorated' exhaustion provision, § 1997e(a)."  Id. at 84 & 103.

15  "Exhaustion is no longer left to the discretion of the district court, but is mandatory."  Id. at 85.

16         On the record before the court, it is evident that plaintiff did not properly exhaust

17  his administrative remedies as to Rabbi Korik's revocation of plaintiff's Kosher diet card.

18  Because plaintiff failed to exhaust all his mandatory administrative remedies against defendants

19  prior to initiating this action, dismissal is mandatory in accordance with § 1997e(a) and

20  Woodford.

21         Because the entire complaint should be dismissed on this ground, it is not

22  necessary to reach defendants' other grounds for dismissal.  Similarly, plaintiff's motion for

23  preliminary injunctive relief should be denied.

24         Accordingly, IT IS HEREBY ORDERED that:

25         1.  Plaintiff's April 23, 2012 motion for the court to review supplemental briefing

26  is granted;

10

1      2.  Defendants' April 24, 2012 motion to strike is denied; and

2      IT IS HEREBY RECOMMENDED that:

3      1.  Defendants' March 9, 2012 motion to dismiss be granted in part;

4      2.  Plaintiff's complaint be dismissed without prejudice for failure to exhaust

5 administrative remedies; and

6      3.  Plaintiff's March 12, 2012 motion for preliminary injunctive relief be denied.

7      These findings and recommendations are submitted to the United States District

8 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

9 eight days after being served with these findings and recommendations, any party may file

10 written objections with the court and serve a copy on all parties.  Such a document should be

11 captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to

12 the objections shall be filed and served within fourteen days after service of the objections.  The

13 parties are advised that failure to file objections within the specified time may waive the right to

14 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15 DATED: December 27, 2012.

16

17                ALLISON CLAIRE
                  UNITED STATES MAGISTRATE JUDGE

18

19

20 /mb;aver2528.mtd

21

22

23

24

25

26